UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| AMALIA LUCAS, Individually and on behalf of N.B-L., minor child,<br><br>    Plaintiffs,<br><br>    v.<br><br>KIRSTIN BRYANT, JENNA AMUNDSON, PEGGY SURBEY, JEREMY INGRAM, ISMAIL ALEEM, DANIEL BENNETT, RYAN CLARK, KEVIN DULEY, MEGAN GILLIAM, CALVIN GILLINGS, STEVEN GRAY, HENRY GREGORY, ISAAC HESS, MICHAEL HILL, MARSHALL HOSKINS, TYANN LAMBERT, MICHAEL MALOTT, ELI MCALLISTER, DUSTIN PERVINE, ANGELIA POE, SHEM RAGSDALE, STEVE SCHWAB, LOVEPREET SINGH, TERRY SMITH, DAVID SPURGEON, SERWAA SYERS, DEVON TARPLEY, WILLIAM YOUNG,<br><br>    Defendants. | CAUSE NO. 1:25-cv-471 |

## COMPLAINT AND JURY DEMAND

1.    Amalia Lucas is an Indiana resident with a minor child, N.B-L.

2.    Amalia lived with her children, Samanta and N.B-L. Samanta, who was an adult, also had a minor child who lived with Amalia, U.L. On June 24, 2023, Samanta was shot and killed outside of the family home apparently due to Samanta's involvement in the illicit drug trade. Amalia and N.B-L. were not at the home at the time of the murder.

3.    Although N.B-L. was not present at the time of the murder and there was no evidence that Amalia was involved in the illicit drug trade, N.B-L. was seized by

law enforcement and placed into custody of the Indiana Department of Child Services ("DCS") on June 24. And while DCS initiated CHINS proceedings regarding N.B-L. on June 27, 2023, it moved to dismiss the case less than two months later, on August 17, 2023. The CHINS court granted that motion. Despite this, DCS later substantiated allegations of neglect against Amalia, causing her to be named on the Indiana Child Protective Index. N.B-L. was returned to Amalia on August 9, 2023.

4.     Amalia, individually and on behalf of the minor child, N.B-L., seek redress for violation of their civil rights under federal law and the Fourth and Fourteenth Amendments to the United States Constitution and compensation under state law for the Defendants' tortious behavior.

5.     This action is brought under 42 U.S.C. § 1983.

## The Plaintiffs

6.     Amalia resides in Marion County, Indiana with N.B-L.

7.     N.B-L.'s date of birth is July 13, 2011.

## The Defendants

8.     At all times relevant to this complaint, Kirstin Bryant ("Bryant") was a Family Case Manager for the Marion County DCS Office. Pursuant to 42 U.S.C. § 1983, Bryant was acting under color of state law by virtue of her position with DCS.

9.     At all times relevant to this complaint, Jenna Amundson ("Amundson") was a Family Case Manager Supervisor for the Marion County DCS Office.

Pursuant to 42 U.S.C. § 1983, Amundson was acting under color of state law by virtue of her position with DCS.

10. At all times relevant to this complaint, Peggy Surbey ("Surbey") was a Family Case Manager regional manager with DCS. Pursuant to 42 U.S.C. § 1983, Surbey was acting under color of state law by virtue of her position with DCS.

11. At all times relevant to this complaint, Ismail Aleem ("Aleem") was an officer with the Indianapolis Metropolitan Police Department ("IMPD"). Pursuant to 42 U.S.C. § 1983, Aleem was acting under color of state law by virtue of his position with IMPD.

12. At all times relevant to this complaint, Daniel Bennett ("Bennett") was an officer with IMPD. Pursuant to 42 U.S.C. § 1983, Bennett was acting under color of state law by virtue of his position with IMPD.

13. At all times relevant to this complaint, Ryan Clark ("Clark") was an officer with IMPD. Pursuant to 42 U.S.C. § 1983, Clark was acting under color of state law by virtue of his position with IMPD.

14. At all times relevant to this complaint, Kevin Duley ("Duley") was an officer with IMPD. Pursuant to 42 U.S.C. § 1983, Duley was acting under color of state law by virtue of his position with IMPD.

15. At all times relevant to this complaint, Megan Gilliam ("Gilliam") was an officer with IMPD. Pursuant to 42 U.S.C. § 1983, Gilliam was acting under color of state law by virtue of her position with IMPD.

16.   At all times relevant to this complaint, Calvin Gillings ("Gillings") was an officer with IMPD. Pursuant to 42 U.S.C. § 1983, Gillings was acting under color of state law by virtue of his position with IMPD.

17.   At all times relevant to this complaint, Steven Gray ("Gray") was an officer with IMPD. Pursuant to 42 U.S.C. § 1983, Gray was acting under color of state law by virtue of his position with IMPD.

18.   At all times relevant to this complaint, Henry Gregory ("Gregory") was an officer with IMPD. Pursuant to 42 U.S.C. § 1983, Gregory was acting under color of state law by virtue of his position with IMPD.

19.   At all times relevant to this complaint, Isaac Hess ("Hess") was an officer with IMPD. Pursuant to 42 U.S.C. § 1983, Hess was acting under color of state law by virtue of his position with IMPD.

20.   At all times relevant to this complaint, Michael Hill ("Hill") was an officer with IMPD. Pursuant to 42 U.S.C. § 1983, Hill was acting under color of state law by virtue of his position with IMPD.

21.   At all times relevant to this complaint, Marshall Hoskins ("Hoskins") was an officer with IMPD. Pursuant to 42 U.S.C. § 1983, Hoskins was acting under color of state law by virtue of his position with IMPD.

22.   At all times relevant to this complaint, Jeremy Ingram ("Ingram") was a detective with IMPD. Pursuant to 42 U.S.C. § 1983, Ingram was acting under color of state law by virtue of his position with IMPD.

23.   At all times relevant to this complaint, Tyann Lambert ("Lambert") was an officer with IMPD. Pursuant to 42 U.S.C. § 1983, Lambert was acting under color of state law by virtue of her position with IMPD.

24.   At all times relevant to this complaint, Michael Malott ("Malott") was an officer with IMPD. Pursuant to 42 U.S.C. § 1983, Malott was acting under color of state law by virtue of his position with IMPD.

25.   At all times relevant to this complaint, Eli McAllister ("McAllister") was an officer with IMPD. Pursuant to 42 U.S.C. § 1983, McAllister was acting under color of state law by virtue of his position with IMPD.

26.   At all times relevant to this complaint, Dustin Pervine ("Pervine") was an officer with IMPD. Pursuant to 42 U.S.C. § 1983, Pervine was acting under color of state law by virtue of his position with IMPD.

27.   At all times relevant to this complaint, Angelia Poe ("Poe") was an officer with IMPD. Pursuant to 42 U.S.C. § 1983, Poe was acting under color of state law by virtue of her position with IMPD.

28.   At all times relevant to this complaint, Shem Ragsdale ("Ragsdale") was an officer with IMPD. Pursuant to 42 U.S.C. § 1983, Ragsdale was acting under color of state law by virtue of his position with IMPD.

29.   At all times relevant to this complaint, Steve Schwab ("Schwab") was an officer with IMPD. Pursuant to 42 U.S.C. § 1983, Schwab was acting under color of state law by virtue of his position with IMPD.

30.   At all times relevant to this complaint, Lovepreet Singh ("Singh") was an officer with IMPD. Pursuant to 42 U.S.C. § 1983, Singh was acting under color of state law by virtue of his position with IMPD.

31.   At all times relevant to this complaint, Terry Smith ("Smith") was an officer with IMPD. Pursuant to 42 U.S.C. § 1983, Ragsdale was acting under color of state law by virtue of his position with IMPD.

32.   At all times relevant to this complaint, David Spurgeon ("Spurgeon") was an officer with IMPD. Pursuant to 42 U.S.C. § 1983, Spurgeon was acting under color of state law by virtue of his position with IMPD.

33.   At all times relevant to this complaint, Serwaa Syers ("Syers") was an officer with IMPD. Pursuant to 42 U.S.C. § 1983, Syers was acting under color of state law by virtue of her position with IMPD.

34.   At all times relevant to this complaint, Devon Tarpley ("Tarpley") was an officer with IMPD. Pursuant to 42 U.S.C. § 1983, Tarpley was acting under color of state law by virtue of his position with IMPD.

35.   At all times relevant to this complaint, William Young ("Young") was an officer with IMPD. Pursuant to 42 U.S.C. § 1983, Young was acting under color of state law by virtue of his position with IMPD.

36.   The Defendants acted individually and jointly under color of state law to deprive Plaintiffs of their civil rights.

37.   Because they acted knowingly, recklessly and in disregard of well-established law, with no objectively reasonable basis for their actions, Defendants

do not have qualified immunity from damages under the standards set forth by the United States Supreme Court, the Seventh Circuit, and this Court.

## JURISDICTION AND VENUE

38.   This Court has original jurisdiction of this action under 28 U.S.C. § 1331 as a civil action arising under the Constitution and laws of the United States.

39.   This Court has supplemental jurisdiction over Plaintiffs' state-law claims under 28 U.S.C. § 1367(a) as those claims are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.

40.   Venue in this Court is proper under 28 U.S.C. § 1391(a) because this is the judicial district in which a substantial part of the events giving rise to the claims occurred.

## FACTS

41.   In June 2023, Amalia lived in Marion County, Indiana, with her adult child, Samanta, her minor child, N.B-L., and Samanta's minor child, U.L.

42.   U.L. had lived with Amalia since his birth.

43.   On the morning of June 24, 2023, Amalia left the family home with N.B-L. to go shopping. U.L. was left at the family home with Samanta.

44.   Unbeknownst to Amalia and N.B-L., Samanta participated in the illicit drug trade and had illicit drugs in the family home.

45.    While Amalia and N.B-L. were away from the family home on June 24, 2023, Samanta was shot and killed in front of the home, apparently due to her involvement in the illicit drug trade.

46.    Defendants Aleem, Bennett, Clark, Duley, Gilliam, Gillings, Gray, Gregory, Hess, Hill, Hoskins, Ingram, Lambert, Malott, McAllister, Pervine, Poe, Ragsdale, Schwab, Singh, Smith, Spurgeon, Syers, Tarpley, and Young (collectively the "IMPD Defendants") arrived at the scene to investigate the shooting.

47.    The IMPD Defendants called DCS regarding U.L.

48.    Bryant was assigned to investigate the matter on behalf of DCS.

49.    Bryant arrived at the family home while law enforcement was still on the scene.

50.    Amalia learned of the shooting and arrived at the home with N.B-L. while law enforcement was still conducting its investigation.

51.    U.L. and N.B-L. were seized by the Defendants.

52.    After the children were seized, Bryant transported them to Riley Children's Hospital, which showed that neither had any physical injuries nor any signs of ingesting or breathing illegal substances.

53.    Neither IMPD nor DCS discovered any evidence showing that Amalia knew that Samanta was dealing drugs.

54.    Neither Bryant nor anyone else from DCS spoke with Amalia until the next day, when they learned that Amalia had no idea that Samanta was dealing drugs.

55.  N.B-L. also told Bryant that she did not see anyone using drugs at the home.

56.  The children were removed from Amalia's custody because of IMPD's and DCS's unevidenced belief that Amalia knew that Samanta dealt drugs from the home.

57.  On June 27, 2023, Defendants Bryant, Amundson, and Surbey (collectively the "DCS Defendants") caused a petition to be filed alleging that N.B-L. was a child in need of services ("CHINS").

58.  The CHINS petition falsely stated that the removal was done "without the assistance of law enforcement."

59.  The CHINS petition falsely stated that the evidence showed that Amalia knew that Samanta was dealing drugs from the home.

60.  The CHINS petition and accompanying documents falsely stated that the home was "unfit and unsafe" for the children.

61.  The CHINS petition falsely claimed that there was an emergency justifying the seizure of the children.

62.  On August 17, 2023, DCS moved to dismiss the CHINS petition regarding N.B-L. because the facts did not provide "a legally sufficient basis to proceed."

63.  The next day, on August 18, 2023, Defendants administratively substantiated allegations that Amalia neglected N.B-L. based on the facts underlying the CHINS petition that DCS sought to dismiss.

64.  The administrative substantiation of allegations against Amalia was false.

65.  DCS's substantiation of allegations of neglect against Amalia caused her to be named on the Indiana Child Protective Index.

66.  The CHINS case involving N.B-L. was dismissed pursuant to DCS's motion to dismiss.

## COUNT I – FALSE IMPRISONMENT

67.  Plaintiffs incorporate by reference the previous allegations in this complaint.

68.  Defendants' seizure of N.B-L. was not supported by probable cause and was unlawful.

69.  Defendants' seizure of N.B-L. restrained N.B-L.'s freedom of movement and deprived N.B-L. of N.B-L's liberty.

70.  Defendants' seizure of N.B-L., restraint of N.B-L.'s movement, and deprivation of N.B-L.'s liberty was without the consent of Amalia or N.B-L.

71.  Plaintiffs have been damaged as a result of the false imprisonment of the children and are entitled to compensatory damages.

## COUNT II – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

72.  Plaintiffs incorporate by reference the previous allegations in this complaint.

73.  Defendants owed Amalia a duty to follow state and federal law when seizing the children.

74.  Defendants breached this duty when seizing the children.

75.  Amalia sustained a direct impact when the children were negligently seized by Defendants.

76.  Amalia sustained an emotional trauma serious enough to affect a reasonable person as a result of her direct involvement in the negligent seizure of the children.

77.  Plaintiffs have been damaged as a result of these actions and are entitled to compensatory damages.

## COUNT III – MALICIOUS PROSECUTION

78.  Plaintiffs incorporate by reference the previous allegations in this complaint.

79.  Defendants instituted or caused to be instituted an action against Amalia.

80.  Defendants acted with malice when doing so.

81.  Defendants had no probable cause to institute the action.

82.  The action was terminated in Amalia's favor.

83.  Plaintiffs have been damaged as a result of these actions and are entitled to compensatory damages.

## COUNT IV – VIOLATIONS OF 42 U.S.C. § 1983

84.  Plaintiffs incorporate by reference the previous allegations in this complaint.

85.  Defendants seized N.B-L. on or about June 24, 2023, without probable cause, without court order, and when N.B-L. was in no imminent danger, thereby violating the N.B-L's Fourth Amendment right against unreasonable seizure.

86.   By seizing N.B-L. and taking N.B-L. from Amalia without probable cause, without a court order, and when N.B-L. was in no imminent danger, Defendants also violated the Plaintiffs' Fourteenth Amendment substantive due process right to familial relations.

87.   By seizing N.B-L. without a pre-deprivation hearing or court order when there was no probable cause to believe that N.B-L. was in imminent danger due to abuse or neglect and no exigent circumstances existed, Defendants violated the Fourteenth Amendment due process rights of Plaintiffs.

88.   By misrepresenting or causing the misrepresentation of material facts in the CHINS petition, Defendants violated Plaintiffs' Fourteenth Amendment due process rights.

89.   By failing to follow Indiana law governing the classification of child abuse allegations, Defendants violated the Plaintiffs' Fourteenth Amendment due process rights.

90.   Plaintiffs have been damaged as a result of Defendants' wrongful conduct.

91.   For each violation of 42 U.S.C. § 1983, Amalia individually, and on behalf of N.B-L., seeks to recover the following:

      a.   Compensatory damages in an amount to be determined by a jury;

      b.   Punitive damages in an amount to be determined by a jury;

      c.   Reasonable attorney and expert fees pursuant to 42 U.S.C. § 1988; and

      d.   Any further relief that may be appropriate.

WHEREFORE, Plaintiffs pray for damages in an amount of money which will fairly and adequately compensate them for all losses, injuries and damages, for the costs of this action, reasonable attorney's fees, and for all other relief just and proper under the circumstances.

## JURY DEMAND

Plaintiffs request a trial by jury.

Respectfully submitted,

WILLIAMS LAW GROUP, LLC


/s/ *Brad A. Catlin*
Brad Aaron Catlin, Atty. No. 21570-29
1101 North Delaware Street, Suite 200
Indianapolis, IN 46202
Tel: (317) 633-5270
brad@williamsgroup.law

ATTORNEYS FOR PLAINTIFFS